[No. 3583.]

BEN CARTER v. THE STATE.

1. MALICIOUS MISCHIEF — WILFULLY PULLING DOWN FENCES — CHARGE OF THE COURT.— In a prosecution for malicious mischief alleged to have been committed by pulling down a fence, the question of title to the property upon which the fence was built is of no importance whatever, and the only inquiry should be, Was the alleged injured party in quiet and peaceable possession of the fence pulled down ? As announcing a contrary rule, and as opposed to the evidence on the material question, see the opinion, *in extenso,* for instructions to the jury *held* erroneous.

2. SAME — FACT CASE.— See the statement of the case for evidence *held* insufficient to support a conviction for pulling down the fence of another, without his consent.

APPEAL from the County Court of Falls. Tried below before the Hon. E. C. Stuart, County Judge.

The appellant was convicted of pulling down the fence around the pig pen of Ogesse Beckwell, in Falls county, Texas, on the 10th day of April, 1884, and was fined in the sum of $10.

Ogesse Beckwell testified, for the State, that the defendant was his brother-in-law, having married his sister. He and defendant lived adjoining each other in the same lot, and had so lived for a number of years. Witness's mother, who was also the mother of the defendant's wife, told witness, in her life-time, that if he wanted to do so he could build a house adjoining the one in which she then lived, the same being the place upon which witness and defendant now live, and could occupy it as long as he wanted to, and to re-

move it whenever he pleased. Witness built and moved into his present house before his mother's death, and had occupied it as his residence, without molestation, until this trouble with the defendant. Witness's mother died some years before his father's death, which occurred in 1879 or 1880. Witness and the defendant's wife were their only children. The hog pen which was pulled down by the defendant was the joint property of the witness and defendant; that is, the two bought hogs and put them in the same pen; but, disagreeing about the manner of feeding them, they separated the hogs and witness built another pen, using one side of the old pen for a side of the new one. This new pen was constructed partly of rails which the witness bought, and partly with some of the old rails that had always been upon the place, and which the witness supposed belonged to the defendant, though he made no objection to the witness's use of them. On or about April 10, 1884, witness and defendant quarreled about witness raising hogs on the place at all, the defendant threatening to expel the witness from the place, and to turn out witness's hogs. Witness told him that if he turned out those hogs he would have to pay for them. Learning that his hogs had been turned out, the witness put them back and fixed the fence. The place where the rails or pickets were taken out of the pen was a part of the yard fence, said fence making a part of the witness's pen, so that when pulled down the witness's hogs could go out, but the defendant's could not. The fence belonged to the witness and was broken without his consent.

W. S. Smith testified that he was a merchant and that Ogesse Beckwell stayed at his business house. On the morning of April 10, 1884, defendant passed the witness's business house and told witness to tell Ogesse that he, defendant, had turned out his, Ogesse's, hogs.

Mary Ann Carter testified, for the defense, in the main as did the witness Beckwell in his own behalf. But she stated, in addition, that her mother left the place to her by will, before her death, which will was subsequently destroyed by her father; and that, on her father's death, he willed the property to her, and that she owned the place, and Beckwell did not.

The motion for new trial raised the questions discussed in the opinion.

*Martin & Dickinson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE.   Ben Carter was convicted at the May term, 1884, of the county court of Falls county of pulling down the fence around the pig pen of one Ogesse Beckwell, and was fined $10. The appellant under his plea of not guilty did not deny pulling down the fence, but justified under a claim of ownership.   Appellant brings the case to this court by appeal, and assigns as error, first, that the court erred in charging the jury as set out in defendant's bill of exceptions No. 1, for the several reasons therein specified.

The court instructed the jury, substantially, that if Beckwell under an agreement with his mother built upon the premises in controversy, and during the mother's life and after her death occupied the building; and that afterwards the mother's husband died and willed the property to another, unless it was the husband's separate property, Beckwell would still have the right of occupancy.   But if the property belonged to the husband and he disposed of it by will, then Beckwell could be required to vacate the premises on proper notice.   That if the jury believed from the evidence that Beckwell's mother was a joint owner of the premises and died without disposing of it, it would descend to her children, and until partition it would be held in common between them; and if Beckwell got possession from his mother, she having a right in the premises, he would have a right in common with the other heirs, and if the jury so believed, they would determine whether the fence was a part of the common property, and that it was broken without the consent of Beckwell, a joint owner, and that defendant broke the same, they would find him guilty, etc.

The property was first owned or occupied by the mother and father of Beckwell and Mary Ann Carter, appellant's wife.   The mother before her death gave Beckwell permission to build a room adjoining her house, and agreed that he should occupy it so long as he might desire, and might remove it if he became dissatisfied. Beckwell under this agreement built the room and occupied it constantly until the trial.   The mother died a number of years ago and left the father surviving her.   The father died in 1880 and willed the property to Mary Ann Carter, defendant's wife, and she and defendant have occupied and held the property as heirs.   Mary Ann Carter testified that her mother made a will and left the property to her, but the will was destroyed by the father.   Last year Beckwell and appellant put their hogs in a pen together on the premises, but, disagreeing about feeding them, Beckwell built a new pen on the premises, partly of his own and partly of rails belonging

to defendant, and by using the fence around the premises for one side of the pen. Appellant then objected to Beckwell's raising hogs on the place, and they quarreled about it, and about April 10, 1884, appellant opened that part of the pen made by the yard fence and let Beckwell's hogs out without his consent. Appellant had told Beckwell he would turn the hogs out, and Beckwell defied him to do it.

The title to the property upon which the pen was built is of no importance. The inquiry should be: Was Beckwell in the quiet and peaceable possession of the fence broken or pulled down? (*Behrens* v. *The State*, 14 Texas Ct. App., 121; *Johnson* v. *The State*, 7 Texas Ct. App., 146.)

Appellant was in the quiet and peaceable possession of the fence around the premises broken. Beckwell built his pen so that the fence around the premises formed a part of the pen, and by thus building his pen, it is claimed, he became possessed quietly and peaceably of the fence broken.

Do these facts constitute Beckwell and defendant joint or common possessors of the broken fence? We think not. This is unlike a case in which the alleged owner of the fence charged to have been broken or pulled down and the defendant were in common possession of the fence, such as a division fence. As defendant excepted to this charge, and believing the same calculated to lead the jury from the correct issue, the judgment because of this error must be reversed.

Again, as the evidence does not sustain the conviction, for this reason as well as the first, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 24, 1885.]